NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBIN TRIVISONNO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 05-3678 (JLL) |
| | ) | |
| v. | ) | |
| | ) | |
| FIDELITY AND GUARANTY LIFE | ) | **O P I N I O N** |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**LINARES,** District Judge.

This matter comes before the Court on the motion for summary judgment of Defendant Fidelity and Guaranty Life Insurance Company ("Fidelity" or "Defendant") pursuant to Federal Rule of Civil Procedure 56. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Defendant's motion is granted.

### BACKGROUND

On July 24, 2003, Fidelity issued a life insurance policy to an applicant, Geraldine Puff ("Puff"), a resident of New Jersey. The policy was issued based upon an application for insurance dated June 9, 2003 (the "Application") completed by Puff. The Application solicited answers to questions regarding Puff's personal medical history as well as her family members' medical history (Application, Ex. B to Compl.). In the section of the Application where Puff ultimately

1

provided her signature, it reads "I have read the questions and answers on Part 2 of this application. To the best of my knowledge and belief, the statements made in the is [sic] application are: complete, true and correctly recorded." (Application, Ex. B to Compl.).

Puff subsequently died on November 11, 2004, approximately fourteen months after the policy was issued. On January 16, 2005, Plaintiff Robin Trivosonno ("Trivosonno"), the beneficiary of the policy, submitted a statement of claim to Fidelity, seeking to receive the life insurance benefits under Puff's policy. The death occurred within the contestability period of the policy since it occurred within two years of the policy's issuance and consequently, Fidelity conducted an investigation of the claim. At the conclusion of its investigation, Fidelity denied Plaintiff's claim.

Defendant alleges that its investigation "revealed a material medical history which was undisclosed by Ms. Puff on the application." (Def. Statement of Facts ¶ 5). Defendant contends that it relied upon Puff's misrepresentations in its decision whether or not to issue the policy to Puff. Although Plaintiff admits Defendant's statement of material facts with the exception of five paragraphs, Plaintiff argues that Puff "did not provide a material false medical history." (Pl. Statement of Facts Opp'n ¶ 4). Plaintiff argues that "[a]ll relevant factual material medical history was disclosed in the application" and that "[a]ny omitted medical information was not material to the risk assumed by defendant to provide life insurance coverage." (Id. at ¶¶ 5-6).

On June 10, 2005 Plaintiff filed her Complaint in the Superior Court of New Jersey which Defendant removed to the District of New Jersey on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332. The Notice of Removal was received by this Court on November 22, 2005. Plaintiff's Complaint seeks judgment against the Defendant in the

2

amount of the policy, $75,000, plus interest having accrued from the date of death. Defendant moved for summary judgment on January 18, 2006 seeking to have the policy rescinded and the complaint dismissed.[1]

## LEGAL STANDARD

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001). "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). When considering a motion for summary judgment, all evidence must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party files a properly supported motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. Fed. R. Civ.

---

[1] As a preliminary matter, the Court notes that it will consider all of Defendant's requests for admission as admitted since Plaintiff failed to comply with Federal Rule of Civil Procedure 36. This rule provides that "[a] party may serve upon any other party a written request for the admission . . . [t]he matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed services upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or the party's attorney." In this case, Plaintiff does not dispute that she failed to answer the requests for admission propounded by Defendant within thirty days of service. Thus, the Court will consider the matters admitted.

P. 56(e); Anderson, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252. Furthermore, conclusory statements and arguments do not raise triable issues which preclude summary judgment. Ridgewood Board of Educ. v. N.E., 172 F.3d 238, 252 (3d Cir. 1999). Instead, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257 (citation omitted). If the opponent fails to make a sufficient showing regarding an essential element of his or her case upon which he or she will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).

## DISCUSSION

Defendants contend that Puff made material misrepresentations on her application for life insurance which necessitate rescission of the policy as a matter of law. Plaintiff denies that Puff provided a materially false medical history and argues that even if any information was omitted, the information was not material to the Defendant's risk. (Pl. Br. Opp'n[2]).

Pursuant to New Jersey law, "material misrepresentations, even if innocent, will justify rescission of a life insurance policy under the doctrine of equitable fraud." Parker Precision Products Co. v. Metropolitan Life Ins. Co., 407 F.2d 1070, 1073 (3d Cir. 1969) (citations omitted). Equitable fraud is available to rescind a life insurance policy even after the death of the insured. Massachusetts Mutual Life Ins. Co. v. Manzo, 122 N.J. 104, 111 (1991) (citations omitted). Pursuant to New Jersey statute, a misrepresentation which "materially affected either

---

[2]The Court notes that Plaintiff's brief does not provide page numbers.

4

the acceptance of the risk or the hazard assumed by the insurer," N.J.S.A. 17B: 24-3(d), may result in rescission of the policy. To secure rescission of a policy, an insurer must demonstrate that the applicant 1) made a misrepresentation to the insurer and 2) that such misrepresentation was material.

### 1.      Existence of Misrepresentation

In Manzo, the New Jersey Supreme Court rejected the proposition that rescission is proper only when an insurance applicant had an "intent to defraud" the insurance company. 122 N.J. at 113. The Court determined that N.J.S.A. 17B: 24-3(d) "does not require proof of an actual intent to deceive." Id. at 114. "Even an innocent misrepresentation can constitute equitable fraud justifying rescission." Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 635 (1995) (citing Metropolitan Life Ins. Co. v. Tarnowski, 130 N.J.Eq. 1, 3-4 (E. & A. 1941)).

To determine whether the applicant has made a misrepresentation, the Court must first determine whether the alleged misrepresentation was in response to a subjective or objective application question. Formosa v. Equitable Life Assurance Soc'y, 166 N.J. Super. 8, 18 (App. Div. 1979). "Objective questions call for information within the applicant's knowledge, 'such as whether the applicant has been examined or treated by a physician.'" Ledley, 138 N.J. at 636 (quoting Formosa, 166 N.J. Super. at 15). On the other hand, subjective questions "seek to probe the applicant's state of mind," Formosa, 166 N.J. Super. at 15, and generally ask the applicant's opinion on his or her health. Ledley, 138 N.J. at 636. "When a question is unambiguous and calls for a statement of fact, misrepresentation or concealment is inexcusable." Id. at 637 (citing Stango v. Metropolitan Life Ins. Co., 10 N.J. Misc. 1128, 1129 (Sup. Ct. 1932)).

To the question whether Puff had, in the last five years, to the extent not mentioned in

Question 1, "[b]een in a hospital, clinic, sanatorium, or other medical facility for operation, observation or treatment, or been advised to and not done so," Puff checked "Yes." (Application Q2, Ex. B to Compl.). The instructions on the Application instructed Puff to elaborate on any "yes" answers provided above and to include "diagnosis; date; duration; names and addresses of all attending physicians and medical facilities." (Application Question 8, Ex. B to Compl.). In the space provided, Puff stated the following:

> 1a. HTN anuerism astma 1973-HTN Lisinopril Dr. Dedona Primary since Oct 2002 anuerism surgery @ Passaic General Dr. Pillossis 1973 surgeries done 2x in 1973 astma since childhood medication [unintelligible] nabumetone arthritis-osteo-arthritis- Theophylline Dr. Dedona [unintelligible] osteoporosis - 3 yrs
>
> 1c. Breast Cancer 1985 mastectomy Dr. Remi Holy Name Hospital Teaneck, NJ
>
> 1d. Astma, Penicillin
>
> 2a. pneumonia Dr. Dedona Brick Hospital Oct 2002 Chest Xray ECG
>
> 2b. Just pnuemonia in 2a - admitted to Hospital
>
> 5 - mother cancer @ [unintelligible] liver

(Application Question 8, Ex. B to Compl.).

Defendant alleges that Puff failed to disclose numerous occasions, within the preceding five years, where she visited hospitals and clinics for treatment. Defendant has provided the Court with medical records of Puff which indicate that as of October 16, 2002, Puff had a "pelvic repair for bladder drop," a condition which a prior physician, Stephen Sherer, M.D., had recommended surgery to repair on June 17, 2002. (Oct. 16, 2002 Admission Report, Meridian Health Center). Thus, the surgical repair of Puff's bladder necessarily occurred between June 17,

2002 and October 16, 2002, well within the five year time period set forth in Question 2 of the Application. Additional reports from Puff's doctors indicated that Puff also received treatment between 1999 and 2003 for a variety of medical conditions, including scoliosis, hypertension, and incontinence.

Since Question 2, and the accompanying Question 8, only call for statements of fact, such questions are objective[3] in nature and any "misrepresentation or concealment is inexcusable." Ledley, 138 N.J. at 637 (citing Stango, 10 N.J. Misc. At 1129). Based upon the record before it, the Court determines that Puff made a misrepresentation to Defendant on the Application when she omitted her 2002 surgery for a prolapsed bladder, a surgery Puff failed to mention in either Question 1 or Question 2 of the Application and the follow-up Question, number 8, and which occurred within five years of the Application. Whether Puff intended to deceive or defraud Defendant is irrelevant.[4] Manzo, 122 N.J. at 114. Further, Plaintiff's Brief in Opposition to Defendant's motion for summary judgment does not assert that Puff disclosed her 2002 surgery. Accordingly, the Court determines that Puff made a misrepresentation on the Application.

The Court now turns to an analysis of whether such misrepresentation was material.

---

[3]The Court notes that Plaintiff has not contested the characterization of these questions as objective. Further, the Court also notes that to the extent that Defendant's brief mentions other misrepresentations allegedly made in the Application, the Court does not deem it necessary to reach such arguments at the present time.

[4]Plaintiff's arguments place undue emphasis on whether Puff omitted or included "relevant" medical information. (Pl. Br. Opp'n; Pl. Stmt. Facts ¶¶ 4-5). A court need not consider the "relevancy" of omitted information within the instant analysis and Plaintiff has failed to point to any case-law in support of this contention. Accordingly, the Court will disregard Plaintiff's arguments to the extent that same refer to "relevancy."

### 2. Materiality of Misrepresentation

N.J.S.A. 17B: 24-3(d) provides:

> The falsity of any statement in the application for any policy or contract covered by this section may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

The Manzo Court interpreted this statutory provision in the disjunctive. Id. at 115. That is, the Manzo Court held that a false statement which materially affects *either* the acceptance of the risk *or* the hazard assumed by the insurer can bar the insured's right to recovery. Id. The Court adopted the test for materiality set forth in Kerpchak v. John Hancock Mut. Ins. Co., 97 N.J.L. 196, 198 (1922). There, "the Court of Errors and Appeals found that false concealment of medical history on a life insurance application was material to the insurer's risk if it 'naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium.'" Manzo, 122 N.J. at 115 (quoting Kerpchak, 97 N.J.L. at 198). In Manzo, the insurance company presented testimony from the underwriter who had authorized the issuance of the decedent's policy. 122 N.J. at 109. The underwriter testified that knowledge of the decedent's true medical condition would have affected the underwriter's "judgment in approving the application, estimating the risk, and fixing the premium." Id. Relying upon such testimony, the New Jersey Supreme Court determined that "Manzo's misrepresentations 'naturally and reasonably' affected Mass. Mutual's estimation of the degree of the risk and its calculation of the premium," and were thus material, entitling Mass. Mutual to rescission. Id. at 117.

Defendant has provided a certification to the Court from one of its underwriters (the

"Gunderson Certification") stating that "[i]f information regarding the surgeries, diagnoses or any of the other medical conditions which were revealed during the claims investigation process had been disclosed, then at the very least, an attending physician's statement would have been requested from the plaintiff's family physician." (Gunderson Cert. ¶ 10; Def. Ex. F). The underwriter states further that if the same information had been revealed on the Application, Defendant "would not have issued the policy and/or would have demanded a higher premium." (Id. at ¶ 11).

Plaintiff does not oppose the content of the Gunderson Certification in her brief nor offer any expert testimony in contradiction. Rather, Plaintiff issues blanket statements which insist that Puff's alleged misrepresentations, if any, were not material. Plaintiff argues that since "Puff died due to a subarachnoid bleed commonly referred to as a 'stroke' . . . [and] [n]othing omitted from her application as quoted by defendant in its brief gave rise to such a condition or an increase in the risk assumed by the defendant," then materiality is absent. (Pl. Br. Opp'n). Beyond Plaintiff's clear failure to refer the Court to any applicable case-law for this proposition, the Court further notes that at the summary judgment phase, it is well-settled that the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257 (citation omitted). Here, Plaintiff has presented virtually no evidence to the Court in opposition to Defendant's motion on the issue of materiality. Plaintiff has submitted only a brief, a statement of material facts pursuant to L. Civ. R. 56.1, a copy of the Application, a copy of Plaintiff's notice of claim, and a copy of Puff's death certificate. Plaintiff has not provided her own underwriting expert to refute the Gunderson Certification, nor provided any other record or testimonial evidence which creates a genuine issue of material fact sufficient

9

to defeat Defendant's motion.[5]

The Court determines, after reviewing the evidence in the record, and specifically, the Gunderson Certification, that Puff's misrepresentation concerning her 2002 surgery for a prolapsed bladder was material to Defendant's acceptance of the risk. Since Defendant avers, without contradiction by Plaintiff, that had Plaintiff truthfully responded with all necessary information, it would have either a) not issued the policy to Puff or b) issued the policy but required higher premiums, the Court determines that Defendant has sufficiently established that Puff's misrepresentation was in fact, material. See Kerpchak, 97 N.J.L. at 198 (holding that a misrepresentation which affects the judgment of the underwriter with respect to estimating the degree of the risk and/or the rate of the premium was material to the insurer's risk); Manzo, 122 N.J. at 117 (applying holding from Kerpchak).

## CONCLUSION

Since this Court determines herein that Puff made a misrepresentation on the Application in response to a clear, objective factual question, when she omitted her 2002 surgery for a prolapsed bladder, and that such misrepresentation was material to Defendant's risk, the Court

---

[5] Plaintiff contends that Defendant had the duty to conduct its own investigation into Puff's medical history and was not entitled to rely on the Application alone. Plaintiff relies on Ledley, 138 N.J. at 627, for the proposition that when an insurer has knowledge of conflicting facts, it has a duty to conduct an independent investigation of an insured's medical history. Id. Plaintiff argues that Puff's application contained facts sufficient to prompt such an investigation. However, Plaintiff does not elaborate on this statement and does not point to specific conflicts of fact in the application. Rather, Plaintiff provides the conclusory statement that "[t]he application submitted by decedent brought forth a history of orthopedic problems, urinary incontinence, disability, pulmonary disease, reproductive issues, etc. which obligated the insurer to delve further into the exact nature and extent of same." (Pl. Br. Opp'n). Since conclusory statements and arguments do not raise triable issues which preclude summary judgment, the Court finds these arguments irrelevant to its instant analysis. Ridgewood, 172 F.3d at 252.

hereby GRANTS Defendant's motion for summary judgment and orders that the life insurance policy issued to Puff is hereby RESCINDED in accordance with applicable New Jersey law.

An appropriate Order follows.

                                               /s/ Jose L. Linares
                                              United States District Judge

DATED: September 5, 2006